```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

                                     *
CHRISTIAN YOUNGS,
                                     *
     Plaintiff,
                                     *    CASE NO. 4:06-CV-19(CDL)
vs.
                                     *
RALPH JOHNSON, in his official
capacity as Sheriff of Muscogee     *
County, Georgia, THE
CONSOLIDATED GOVERNMENT OF          *
COLUMBUS, GEORGIA, FLORIA
BROOKS, ANGELA LAWRENCE, CHARLES    *
LUCAS, JOSEPH YAWN, ROBERT
TROMBLEY and CHARLIE WIMBERLY,      *

     Defendants.                    *

                                     *
```

O R D E R

This action arises from injuries suffered by Plaintiff while he was a pre-trial detainee in the Muscogee County Jail. He claims that his cellmate pulled him off his bunk causing him to fracture his hip. He asserts federal and state law claims against the Muscogee County Sheriff, the Columbus Consolidated Government, and various sheriff employees based upon the placement of Plaintiff's assailant in his cell and the subsequent failure to render adequate medical care to Plaintiff. Presently pending before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 44).

Plaintiff asserts two sets of claims—one arising from the placement of Plaintiff's assailant in his cell and the other arising from inadequate medical care subsequent to the attack. As discussed

1

below, the Court grants summary judgment in favor of Defendants as to all of Plaintiff's claims except for Plaintiff's constitutional inadequate medical care claim against the Columbus Consolidated Government pursuant to 42 U.S.C. § 1983 ("§ 1983").[1]  Regarding that claim, the only argument made by the Sheriff and County in support of their motion for summary judgment is that the operation of the county jail is a state function rather than a county one, and therefore, the Sheriff cannot be liable because of Eleventh Amendment immunity, and the County cannot be liable because it has no responsibility for the county jail.

The Court agrees with Defendants as to Plaintiff's inmate placement claim, and therefore, they are entitled to summary judgment as to that claim.  However, regarding Plaintiff's inadequate medical care claim, the Court finds that the provision of medical care at the county jail is a county function carried out by the Sheriff, and therefore, the Sheriff is not entitled to Eleventh Amendment immunity for that claim; nor may the County avoid liability based upon its contention that providing medical care at the county jail is a state function, which it is not.  Thus, their motions for summary judgment are denied as to this claim.  Although the Court finds that summary judgment is not appropriate as to Plaintiff's constitutional inadequate medical care claim against the Sheriff or the County, the Court does find that Plaintiff's inadequate medical care claim

_____

[1]The Consolidated Government is also referred to in this Order as "Muscogee County" and/or "the County."

2

against the Sheriff should nevertheless be dismissed because it is the functional equivalent of Plaintiff's inadequate medical care claim against the County which shall remain pending for trial.[2]

BACKGROUND

## I.   The Parties

Plaintiff Christian Youngs, a former Muscogee County correctional officer, was a pre-trial detainee in the Muscogee County Jail ("MCJ").  (Defs.' Statement of Facts as to Which There is No Genuine Issue to be Tried ¶¶ 1, 15 [hereinafter Defs.' SOF].)  At all pertinent times, Defendant Sheriff Ralph Johnson was the Sheriff of Muscogee County, Georgia.  He has been sued in his official capacity only.  (*Id.* ¶ 2.)  Defendant Consolidated Government of Columbus, Georgia ("Muscogee County") is a consolidated government comprised of Columbus, Georgia, and Muscogee County, Georgia, organized under the laws of the State of Georgia.  (*Id.* ¶ 3.)  At all pertinent times, Defendants Floria Brooks (a nurse), Angela Lawrence (a nurse), Charles Lucas (a deputy), Joseph Yawn (a deputy),  Robert Trombley (a deputy and classification officer), and Charlie Wimberly (a deputy

---

[2]The Court notes that Defendants Brooks, Lawrence, Lucas, and Yawn did not move for summary judgment as to Plaintiff's § 1983 inadequate medical care claims against them in their individual capacities. Therefore, those claims remain pending for trial along with the § 1983 inadequate medical care claim against the County.

and classification officer) were employed by the Muscogee County Sheriff's Department at the Muscogee County jail.[3]

## II.  Plaintiff's Arrest and Classification

Under MCJ's classification system, officers classify inmates upon initial incarceration pursuant to the "Muscogee County Jail Operations Division Inmate Classification System." (Defs.' SOF ¶ 13; Ex. D. to Defs.' SOF, Muscogee County Sheriff's Office Custody Classification Assessment.)  Using the Classification Risk Assessment Form, inmates are evaluated based on an inmate's (1) Medical Emergency Potential; (2) Escape Potential; (3) Religious/Racist/Potential Conflict Potential; (4) Suicide Potential; (5) Deviant Sexual Assault Potential; (6) Victimization Potential; and (7) Assaultive Potential. (Defs.' SOF ¶ 13.)  Inmates are evaluated in an effort to confine prisoners safely at MCJ.  (*Id.*)  Classification officers are trained in evaluating inmates, and they are specifically employed to classify inmates and recommend housing assignments.  (*Id.* ¶ 14.)  The classification officer, upon evaluating the inmate, makes a housing recommendation.  A

---

[3]Plaintiff does not indicate whether the individual Defendants Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly are being sued in their individual or official capacities, or both.  "When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Ga. Dep't of  Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). The parties, in their briefs, proceeded as if Defendants Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly are being sued in both their official and individual capacities.  Thus, this Court concludes that Plaintiff brings claims against the individual Defendants in both their official and individual capacities.

classification officer's superior then reviews the housing assignment, and if it is approved, the inmate is moved to his assigned housing area. (*Id.*)

On May 17, 2004, Plaintiff was arrested and charged with transmitting a false public alarm and possession of a hoax device, both felonies. (Ex. A to Defs.' SOF, Columbus Police Department Arrest Report.) Plaintiff arrived at MCJ on May 18, 2004, where he was classified by Trombley as a minimum security inmate and assigned to unit A-6. (Defs.' SOF ¶ 15.) Trombley recommended the A-6 unit because it was a two-man cell where ex-correctional officers were normally kept, and it was away from the general population of the jail. (*Id*.) On May 19, 2004, after Plaintiff was placed in unit A-6, another inmate, Tyrone Barnum, was placed in the two-man cell with Plaintiff. (*Id.* ¶ 17.)

### III. Inmate Tyrone Barnum

Barnum was arrested on April 17, 2003 for aggravated child molestation, aggravated assault, battery, five counts of false imprisonment, and possession of a knife during a crime. (Ex. G to Defs.' SOF, Columbus Police Department Arrest Report.) When first booked at MCJ on April 18, 2003, Barnum was classified by Wimberly as a maximum security inmate. Barnum's classification contained a special assessment noting Barnum's psychiatric issues. (Ex. J to Defs.' SOF, Muscogee County Sheriff's Office Custody Classification Assessment.)

5

On August 6, 2003, Barnum attacked two inmates and received medical care for his injuries. Barnum was the only inmate injured. (Ex. K to Defs.' SOF, Inmate Rules Violation Report, Aug. 6, 2003.) Pursuant to MCJ's policy of reassessment every six months, Barnum was reassessed for classification purposes by Trombley on October 16, 2003. Trombley classified Barnum again as a maximum security inmate. (Ex. L to Defs.' SOF, Custody Classification Reassessment; Defs.' SOF ¶ 20.) On May 17, 2004, Barnum waved his foot around another inmate's head, and as a result, Sergeant Gifford Anthony moved Barnum to another cell. (Anthony Dep. 5:21-7:14, Oct. 26, 2006; see Ex. M to Defs.' SOF, Incident Report.) However, Barnum was not involved in any violent incidents at MCJ other than the August 6, 2003 fight. (Ezell Aff. ¶ 12, June 5, 2008.)

On May 19, 2004, Barnum was placed in the cell with Plaintiff. (Defs.' SOF ¶ 23.) Plaintiff stated that he remembered two deputies placing Barnum in his cell, but did not recall their names. (Pl.'s Dep. 26:4-27:3, Oct. 30, 2006.) Both Trombley and Wimberly were on duty that day, but neither recalled making the decision to move Barnum into the cell with Plaintiff. (Trombley Dep. 28:25-29:4, Apr. 2, 2008; Wimberly Dep. 20:3-9, Apr. 2, 2008.) In fact, Trombley contends that Barnum could have been moved by "any of the command staff, [including] Captain Nance, Commander Ezell, Captain Mills, or one of the shift supervisors." (Trombley Dep. 29:6-8.) However, Trombley had no information regarding whether any of them took part

in the move. (*Id.* at 29:9-11.) Both Trombley and Wimberly contend that, if they knew of Barnum's file, they would not have placed Barnum in Plaintiff's cell. (Trombley Dep. 26:3-27:2; Wimberly Dep. 20:3-12.)

**IV.  The Incident**

After Barnum was placed in Plaintiff's cell, Plaintiff informed employees at the jail that because he was a former correctional officer, no one was supposed to be in the cell with him. (Pl.'s Dep. 26:16-18.) Plaintiff claimed that the officers stated that they would look into the matter and then "just . . . walked off." (*Id.* at 26:13-22.) Plaintiff contends that Barnum began talking to himself and making inappropriate comments such as "'quit groping me, quit grabbing me, leave me alone[.]'" (*Id.* at 28:3-7.) Plaintiff claims that he was on his top bunk and was not groping, grabbing, or speaking to Barnum. (*Id.* at 28:8-12.)

Plaintiff contends that throughout the course of the evening, he tried "to no avail" to gain the attention of deputies by speaking with them as they were doing their checks or "coming through." (*Id.* at 28:22-29:6.) The last time Plaintiff claims he saw any deputy was at approximately 12 a.m. (*Id.* at 29:10-12.) Plaintiff fell asleep at some point during the night, but he was awakened when Barnum pulled him off of his top bunk, causing him to fall to the floor. (*Id.* at 29:19-30:1.) Plaintiff claims that when he hit the floor, he felt something "just snap and break," and that Barnum stomped and

7

kicked him until Plaintiff was able to hit Barnum's leg to stop the attack.  (*Id.* at 30:2-15.)  Plaintiff screamed for help but no one responded.  After pleading for help for at least thirty minutes with no response, Plaintiff climbed back up to his top bunk and lay there for approximately three to four hours.  (*Id.* at 30:16-31:17.)

## V.   Defendants' Alleged Responses to the Incident

At approximately 3:30 a.m. on May 20, 2004, Lucas, Deputy Otis Griggs, and Correctional Officer Tyler Findley were feeding the inmates and stepped inside Plaintiff's cell.  (Lucas Dep. 17:10-12, Oct. 5, 2006.)  Plaintiff told Lucas that he and Barnum had gotten into a fight and that Barnum had "pulled him off the bunk."  (*Id.* at 17:12-15.)  Plaintiff told the officers that his leg was hurting, and as a result, Lucas obtained a Medical Request Form from Lawrence and gave it to Plaintiff to fill out.  Lucas did not deem the situation an emergency.  (*Id.* at 18:19-25.)  Lucas acknowledged that between approximately 3:30 a.m. and 6:00 a.m., no one other than Lucas had checked on Plaintiff.  (*Id.* at 42:2-6.)  Although both Lawrence and Brooks recalled hearing a call over the intercom that stated that an inmate was complaining of leg pain, they contend that they never received a completed Medical Request Form from Lucas.  (Lawrence Dep. 18:21-19:1, Oct. 26, 2006; Brooks Dep. 19:11-15, Oct. 3, 2006.)

At approximately 6:15 a.m. on May 20, 2004, Yawn encountered Plaintiff and Plaintiff informed him that "he thought his leg was hurt or maybe broke [sic]."  (Yawn Dep. 10:3-7, Jan. 30, 2007.)  Yawn

contends that he went to the medical clinic and told Lawrence and Brooks of Plaintiff's complaints.  Yawn stated that he was told by Lawrence and Brooks that nothing could be done until Physician Assistant Ervin Harris arrived at 9 a.m.  (*Id.* at 17:20-23.)

At approximately 10:45 a.m. the same morning, Nurse Patricia Mott, after observing Plaintiff's physical condition in his cell, took Plaintiff into the clinic to be seen by Physician Assistant Harris. (Mott Dep. 14:1-18, Oct. 3, 2006.)  Harris examined Plaintiff.  He observed that Plaintiff "looked like a man that was in some obvious pain."  (Harris Dep. 14:18-19, Oct. 3, 2008.)  Believing that Plaintiff had a fractured hip, Harris instructed the correctional officers in the examining room to transport Plaintiff to the Emergency Room at the Medical Center in Columbus, Georgia.  (*Id.* at 14:18-15:16.)  Plaintiff arrived at the Emergency Room at approximately 1:25 p.m. on May 20, 2004.  (Pl.'s Statement of Material Facts to which Pl. Contends there Exists a Genuine Issue to be Tried ¶ 131 [hereinafter Pl.'s SOF].)[4]  Plaintiff was seen by Dr. Kennon A. McClendon, who then transferred him to orthopedist Dr. DeWitt Jones.  (Pl.'s SOF ¶¶ 131, 133.)  Plaintiff was diagnosed with a fractured hip.  He had surgery on May 21, 2004 and was discharged on May 26, 2004.  (Ex. U to Defs.' SOF, Medical Discharge Summary.)

_____

[4]Defendants, in paragraph 41 of Defendants' Statement of Material Facts, contend that Plaintiff arrived at the Medical Center at approximately 12:30 p.m. on May 20, 2004.  However, Plaintiff contends that he arrived at the Medical Center at approximately 1:25 p.m. on May 20, 2004.  (Pl.'s SOF ¶¶ 130-131.)  The Court finds this fact immaterial for the purposes of the pending motion.

## VI.  Plaintiff's Claims

Plaintiff brings claims under § 1983 against Sheriff Johnson[5] in his official capacity and Muscogee County, alleging that they violated his Fourteenth Amendment rights by failing to train their employees regarding (1) the classification and placement of inmates and (2) the provision of medical care.  Plaintiff also brings a § 1983 claim against Trombley and Wimberly, in their individual capacities, alleging that they violated his Fourteenth Amendment rights by improperly placing Barnum in the cell with Plaintiff.  Plaintiff also asserts various claims against Defendants under Georgia state law, alleging breach of duty claims arising from (1) the placement of Barnum in the cell with Plaintiff and (2) the provision of medical care.

Defendants filed a motion for partial summary judgment as to: (1) all of Plaintiff's § 1983 constitutional claims against Sheriff Johnson, Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly in their official capacities; (2) all of Plaintiff's § 1983 constitutional claims against Muscogee County; (3) Plaintiff's § 1983 constitutional claim against Trombley and Wimberly in their individual capacities regarding the placement of Barnum in Plaintiff's cell; (4) all of Plaintiff's state law claims against Muscogee County; (5) all of Plaintiff's state law claims against Sheriff Johnson, Brooks,

---

[5]Plaintiff brings the same § 1983 claims against Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly in their official capacities.  These claims are treated as claims against the Sheriff in his official capacity. *See* discussion *infra* note 6.

Lawrence, Lucas, Yawn, Trombley, and Wimberly in their official capacities; and (6) all of Plaintiff's state law claims against Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly in their individual capacities.  Plaintiff contends that there are genuine issues of material fact as to these claims so summary judgment is not appropriate.  For the following reasons, the Court grants in part and denies in part Defendants' motion.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When a defendant moves for summary judgment, it is the defendant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To meet this burden, the defendant may point to "affirmative evidence demonstrating that [the plaintiff] will be unable to prove [his] case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted).  In the alternative, the defendant may show "that there is an absence of evidence to support [the plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325.  A defendant is not required to come forth with evidence negating the plaintiff's claim.  *See id.*

Once a defendant meets its burden, the plaintiff must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324. The plaintiff "must go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324. A plaintiff is not required to produce evidence in a form that would be admissible at trial, but she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.; accord* Fed. R. Civ. P. 56(e).

The defendant is entitled to summary judgment if, after construing the evidence in the light most favorable to the plaintiff and drawing all justifiable inferences in his favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the plaintiff-there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

12

*Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

DISCUSSION

**I.   Federal Law Claims**

A.   <u>Section 1983 Claims against Sheriff Johnson</u>

Sheriff Johnson[6] contends that he is entitled to summary judgment as to all of Plaintiff's § 1983 constitutional claims based upon Eleventh Amendment immunity.   Plaintiff responds that there are genuine issues of material fact as to whether Eleventh Amendment immunity applies so summary judgment is not appropriate.   As discussed below, the Court grants Sheriff Johnson's motion as to Plaintiff's § 1983 claim regarding the placement of Barnum in Plaintiff's cell because he is entitled to Eleventh Amendment immunity on that claim. However, the Court denies Sheriff Johnson's motion as to Plaintiff's § 1983 claim regarding the provision of emergency medical care because he is not entitled to Eleventh Amendment immunity on that claim.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

---

[6]Plaintiff also brings § 1983 claims against Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly in their official capacities.   These claims are treated as claims against the Sheriff in his official capacity.   *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent[.]" (internal punctuation omitted)); *see also Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007) (per curiam) (holding that employees of the sheriff, in their official capacities, were entitled to Eleventh Amendment immunity).

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI. It is well settled that Eleventh Amendment immunity bars suits brought in federal court when an "arm of the State" is sued.   *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1107 (2004).

"Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id*.   The Eleventh Circuit evaluates four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."   *Id.* at 1309.   In this case, the Court must determine whether a county sheriff is an "arm of the State" when carrying out the functions of inmate placement and medical care in a county jail.

### 1.   The Placement of Barnum in Plaintiff's Cell

In general, the Eleventh Circuit has concluded that Georgia sheriffs are an "arm of the State" in the operation of county jails and are therefore entitled to Eleventh Amendment immunity for claims arising from jail operations.   *See Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1324-25 (11th Cir. 2005) (holding that the county sheriff wore a "state hat" when promulgating

14

policies and procedures governing conditions of confinement at the county jail); *Manders*, 338 F.3d at 1328 (holding that the county sheriff was an arm of the State in establishing use-of-force policy at the jail).  Because the classification and placement of inmates clearly falls within the operation of jails, Sheriff Johnson is entitled to Eleventh Amendment immunity as to Plaintiff's classification/placement claim.[7]   Accordingly, Sheriff Johnson's motion for summary judgment as to Plaintiff's § 1983 claim regarding the placement of Barnum in Plaintiff's cell is granted.[8]

> 2. *The Provision of Medical Care*

Sheriff Johnson contends that he is also entitled to Eleventh Amendment immunity as to Plaintiff's § 1983 claim regarding the diagnosis and treatment of Plaintiff's injury.  The Eleventh Circuit

---

[7]Plaintiff contends that the Muscogee County Sheriff traded his state hat for a county hat in the operation of the jail when he along with the County entered into an agreement in 1999 with the United States Department of Justice regarding conditions at MCJ.  (*See* Attach. to Ex. A to Defs.' Reply Br. in Supp. of Mot. for Partial Summ. J. [hereinafter Agreement].) The Agreement provides that the "City/County" shall, *inter alia*, "develop and implement[] appropriate, comprehensive policies and procedures for Jail Operations." (Agreement ¶ 20.)  Plaintiff argues that this provision establishes that the Sheriff is an "arm of the county" because the agreement provides Muscogee County with the authority and obligation to promulgate jail policies and procedures–a function that is normally reserved to the Sheriff acting under powers derived directly from the State.  However, the Agreement also provides that the Sheriff in his official capacity is primarily responsible for developing MCJ policies and procedures.  (*E.g.*, Agreement ¶ 20.)  The Court finds that the Sheriff has not, through this Agreement, sufficiently relinquished to Muscogee County his state-derived authority for the operation of the jail to the extent that he loses his Eleventh Amendment immunity.

[8]As mentioned previously, the disposition of this classification/placement claim in favor of the Sheriff also results in summary judgment on this claim in favor of the other employees of the Sheriff who have been sued in this action in their official capacities.

has not addressed whether a Georgia sheriff wears a "state hat" or a "county hat" when providing medical services to county jail inmates. *Manders*, 338 F.3d at 1328; *see Purcell*, 400 F.3d at 1325.  The Sheriff suggests that he wears a state for all functions at the jail.  The Eleventh Circuit, however, has declined to find that a Georgia sheriff wears a "state hat" for *all* functions.  Therefore, it does not follow that just because the Sheriff acts as an arm of the State with respect to the placement and classification of inmates, he automatically also acts as an arm of the State with respect to the provision of medical care.  Instead, the Court reads *Manders* to require it to analyze the four *Manders* factors to determine whether Sheriff Johnson is entitled to Eleventh Amendment immunity as to Plaintiff's § 1983 claim regarding the provision of medical care.

## I.   HOW STATE LAW DEFINES THE ENTITY

The first factor to be analyzed is how Georgia law defines the sheriff's office.  In Georgia, the office of sheriff is an elected constitutional office.  Ga. Const. art. IX, § 1, ¶ III.  Although a sheriff performs his duties mainly within the confines of a county,

> the essential governmental nature of [the sheriff's] office
> is (a) to continue to perform [the sheriff's] historical
> common law duties to enforce the law and preserve the peace
> on behalf of the sovereign State and (b) to perform
> specific statutory duties, directly assigned by the State,
> in law enforcement, in state courts, and in corrections.

*Manders*, 338 F.3d at 1319.

The specific duties the State assigns to sheriffs shed light on the character of the sheriff's office.  However, the Court must focus

16

on the nature of the function at issue here: the provision of medical care at a county jail.  Although the sheriff's obligation to provide county inmates with medical services is directly derived from the State, the provision of medical care is directly delegated through the county entity.  "[I]t shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention[.]"  O.C.G.A. § 42-5-2(a); *see Middlebrooks v. Bibb County*, 261 Ga. App. 382, 384, 582 S.E.2d 539, 542 (2003) ("[A] county has [a] legislative duty to provide an inmate in its custody and care with medical care.").  Thus, because the provision of medical care is directly delegated through the county entity, the Court concludes that the first factor favors a finding that the provision of medical care in county jails is a county function.

### ii.  WHERE STATE LAW VESTS CONTROL

The second factor in the Eleventh Amendment analysis examines where Georgia law vests control.  As established in *Manders*, the Governor retains significant control over sheriffs.  Specifically, the Governor may initiate an investigation of any suspected misconduct and may even suspend the sheriff.  *Manders*, 338 F.3d at 1321; *see* O.C.G.A. § 15-16-26(c).  Thus, the Eleventh Circuit in *Manders* concluded that the "disciplinary procedure [was] direct, substantial, and immediate state control over the sheriff's acts."  *Id.*

17

However, when examining the particular function at issue in this case–provision of medical care in a county jail–it is clear that counties have a distinct obligation to provide medical care to inmates in county jails, which is carried out through the sheriff. *See* O.C.G.A. § 42-5-2(a); *see also Manders*, 338 F.3d at 1322 (recognizing that Georgia counties have obligations involving inmates' food, clothing, and medical needs). Furthermore, county governing authorities have oversight over a sheriff's operations at a jail through the investigative powers of grand juries, which must inspect jails annually and make recommendations to the county commission. *See* O.C.G.A. § 15-12-71(c); *see also* O.C.G.A. § 15-12-78. Because of the county's direct involvement in and responsibility for providing medical care for county jail inmates, the Court concludes that this factor also weighs in favor of finding that the provision of medical care in county jails is a county function.

### iii. WHERE THE ENTITY DERIVES ITS FUNDS

The third factor in the Eleventh Amendment analysis is the source of the entity's funds. The Eleventh Circuit, in *Manders*, noted that State funds were involved in the particular function of force policy in county jails because the State provided funding for training of sheriffs, funded the Governor's disciplinary procedure over sheriffs, and paid for certain state offenders assigned to the county jails under the sheriff's supervision. 338 F.3d at 1323.

18

However, in this case, examining the particular function of the provision of medical care in county jails, O.C.G.A. § 42-5-2(a) provides that the county has an obligation to provide funding for jail necessities.  Although the Eleventh Circuit, in *Manders*, found that this statute was not dispositive on the issue of force policy, it stressed the fact that the case did not involve medical care.  338 F.3d at 1323 n.43.  Therefore, given this caveat and the clear language of O.C.G.A. § 42-5-2, the Court concludes that this factor weighs in favor of a finding that the provision of medical care to county jail inmates is a county function.

### iv.  LIABILITY FOR AND PAYMENT OF JUDGMENT

The final factor in the Eleventh Amendment analysis is determining who is responsible for judgments against the entity.  In *Manders*, the Eleventh Circuit determined that "although the State and the county are not required to pay an adverse judgment against the sheriff, both county and state funds indirectly are implicated."  338 F.3d at 1329.  The Eleventh Circuit, however, determined that this factor did not defeat immunity presumably because the first three factors weighed in favor of immunity.  *Id.*  Here, however, the first three factors weigh heavily in favor of finding that the sheriff is an arm of the county.  Thus, the Court finds that the fourth factor does not defeat a finding that the sheriff is an arm of the county when providing medical care to inmates in county jails.

Because the Court finds that the sheriff is an arm of the county in providing medical care in a county jail, Sheriff Johnson is not

entitled to Eleventh Amendment immunity.[9]  Therefore, the Court denies his motion for summary judgment as to Plaintiff's § 1983 inadequate medical care claim.[10]

B.   Section 1983 Claims against Muscogee County

Plaintiff also asserts § 1983 claims against Muscogee County based upon his placement at the county jail and the inadequate medical care allegedly provided to him at the jail.  His theory against the County is the same as his theory against the Sheriff.  Based upon an analysis similar to the Eleventh Amendment analysis used in evaluating these claims against the Sheriff, the Court finds that the County is entitled to summary judgment on Plaintiff's placement/classification claim but is not entitled to summary judgment on Plaintiff's inadequate medical care claim.

---

[9]Other district courts have reached similar conclusions. *See Sanders v. Langley*, No. 1:03-CV-1631, 2006 WL 826399, at *10 (N.D. Ga. Mar. 29, 2006) (finding that Eleventh Amendment immunity does not bar claim against sheriff for inadequate medical care); *see also Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1321-22 (N.D. Ga. 2006) (concluding that sheriff was acting as an arm of the county when caring for the medical needs of a pretrial detainee); *Green v. Glynn County*, No. Civ. A. CV201-52, 2006 WL 156873, at *3 (S.D. Ga. Jan. 19, 2006) (finding that the sheriff is an arm of the county when providing medical care to inmates).  The Court observes that these cases were not cited by the parties.  Although they are not binding precedent, they address the precise issue presented here and therefore have persuasive value, particularly when this issue has not been addressed by the Eleventh Circuit.

[10]This ruling should not be interpreted to mean or imply that Plaintiff's inadequate medical care claim will survive a motion for judgment as a matter of law at trial.  This ruling simply holds that the Sheriff is not entitled to Eleventh Amendment immunity.  At trial, to prevail on this claim, Plaintiff must still prove that Plaintiff was deprived of medical care of constitutional proportions and that the Sheriff and/or County's policy or custom was a moving force behind the constitutional violation.  *See McDowell v. Brown,* 392 F.3d 1283, 1288-94 (11th Cir. 2004).

### 1. Placement of Barnum in Plaintiff's Cell

A county is liable when the county's "official policy" causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff may establish a constitutional deprivation under § 1983 by either identifying "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc); *see Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992) (per curiam).

Because Muscogee County does not have an officially-adopted policy regarding the placement of inmates in MCJ, Plaintiff must show that Muscogee County "has a custom or practice of permitting [a constitutional violation] and that the county's custom or practice is the moving force [behind] the constitutional violation." *Grech*, 335 F.3d at 1330 (second alteration in original) (internal quotation marks omitted). Under this theory, Plaintiff "(1) must show that [Muscogee County] has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for [Muscogee County] concerning the act alleged to have caused the particular constitutional violation in issue." *Id.*

Based upon the present record, it is undisputed that Sheriff Johnson is the person in charge of the county jail. However, for the

21

County to be responsible for his policies and/or customs, he must have been acting at the time as the final policymaker for the County. Regarding Plaintiff's classification/placement claim, it is clear that the Sheriff was not a policymaker for the County but was acting on behalf of the State as previously explained in the Court's Eleventh Amendment immunity discussion. *See also Grech*, 335 F.3d at 1347-48 (sheriff wears a state hat when performing law enforcement functions at county jails). Therefore, Muscogee County is not responsible for the Sheriff's inmate placement policies in the operation of the jail. *Id.* Accordingly, Muscogee County's motion for summary judgment as to Plaintiff's § 1983 claim regarding the placement of Barnum in Plaintiff's cell is granted.

### 2.   *Provision of Medical Care*

As explained in the Court's previous Eleventh Amendment discussion, the relationship between the County and the Sheriff regarding inmate medical care is different from their relationship regarding inmate classification and placement. Although the Sheriff may be the "final decisionmaker" at the jail for all aspects of the jail operation, he acts on behalf of the County when making decisions regarding medical care for the county inmates. Under Georgia law, the provision of medical care to county inmates is a county function. The County can certainly delegate that function to the Sheriff, which the record establishes was done here, but when it does so, it does not relinquish its ultimate responsibility for that function. The Sheriff simply becomes the final policymaker for the County regarding the

22

promulgation of appropriate policies and procedures for providing adequate medical care to inmates at the county jail.[11]  Therefore, Muscogee County is not entitled to summary judgment as to Plaintiff's § 1983 inadequate medical care claim.[12]

Based on the foregoing, Plaintiff's § 1983 inadequate medical care claim against the Sheriff in his official capacity and against the County survive summary judgment.  Plaintiff's official capacity claim against the Sheriff, however, is the functional equivalent of his claim against the County.  *See Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) (per curiam).  Therefore, his claim against the Sheriff is dismissed while his inadequate medical care claim against the County shall proceed to trial.

C.    Section 1983 Claim against Trombley and Wimberly in their Individual Capacities

Trombley and Wimberly, in their individual capacities, are entitled to summary judgment as to Plaintiff's § 1983 claim regarding the placement of Barnum in Plaintiff's cell because they are entitled to qualified immunity.  Trombley and Wimberly are entitled to qualified immunity because Plaintiff's allegations do not give rise

---

[11]The Court observes that Muscogee County has pointed the Court to no evidence disputing the fact that the Sheriff is the final decisionmaker at the County jail for providing inmate medical care; they simply argue that when the Sheriff does so, he is not doing so on behalf of the County.

[12]The Court notes that Muscogee County's motion for summary judgment is based solely upon its argument that the Sheriff is not a final policymaker for the County with regard to the functions at issue in this case.  The Court expresses no opinion as to whether the County would be entitled to judgment as a matter of law for other reasons not asserted by the County.

to a constitutional violation. "Government officials performing discretionary functions are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cagle v. Sutherland*, 334 F.3d 980, 988 (11th Cir. 2003) (per curiam) (internal quotation marks omitted). Because Trombley and Wimberly were acting within their discretionary authority, the Court's inquiry turns on whether Trombley and Wimberly violated a constitutional right. *See Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006).

Plaintiff contends that Trombley and Wimberly violated Plaintiff's rights under the Eight Amendment.[13] "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Thus, to survive summary judgment, Plaintiff must produce sufficient evidence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). Moreover, to prevail against Trombley and Wimberly in

---

[13]Plaintiff alleges both Eighth and Fourteenth Amendment violations in his Amended Complaint. However, because he was a pre-trial detainee and not a prisoner, Plaintiff's constitutional rights arise from the Due Process Clause of the Fourteenth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985). Although Plaintiff's rights arise under the Fourteenth Amendment, Plaintiff's claims may be properly analyzed under the Eighth Amendment because "the due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (per curiam) (alteration in original) (internal quotation marks omitted).

their individual capacities, Plaintiff is required to show that they "were personally involved in acts or omissions that resulted in the constitutional deprivation." *Id.*

Neither Trombley nor Wimberly recalled placing Barnum in Plaintiff's cell. (Trombley Dep. 25:5-7; Wimberly Dep. 20:3-12.) However, even assuming *arguendo* that Trombley or Wimberly placed Barnum in Plaintiff's cell, Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to the conclusion that they acted with deliberate indifference to a substantial risk of serious harm. Barnum's prison report provided little, if any, information that Barnum posed any risk to Plaintiff. Barnum's prison report provided that he was involved in only one violent incident while at MCJ, almost a year before the Incident occurred, and that Barnum himself was the only person injured in the accident. (Ex. K to Defs.' SOF, Inmate Rules Violation Report.)

Furthermore, there is no evidence in the record to suggest that Plaintiff felt threatened by Barnum's presence. Plaintiff merely claimed that because he was a former correctional officer, no other inmates were supposed to be placed in the cell with him. (Pl.'s Dep. 26:16-18.) There is no evidence in the record to suggest that the alleged assault was a result of Plaintiff's status as a former correctional officer or that Barnum even knew that Plaintiff was a former correctional officer. Therefore, Plaintiff has failed to meet his burden of producing sufficient evidence from which a reasonable factfinder could conclude that Trombley and Wimberly knew that there

was a substantial risk of serious harm, and in disregard of this serious harm, placed Barnum in Plaintiff's cell. Because the facts construed in the light most favorable to Plaintiff do not show a violation of a constitutional right, the Court concludes that Trombley and Wimberly, in their individual capacities, are entitled to summary judgment as to Plaintiff's § 1983 constitutional claim regarding their alleged placement of Barnum in Plaintiff's cell.

## II. State Law Claims

### A. Muscogee County

Muscogee County is entitled to summary judgment as to Plaintiff's state law claims. "A county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. § 36-1-4; *see also Williams v. Whitfield County*, 289 Ga. App. 301, 302, 656 S.E.2d 584, 586 (2008) ("The immunity, at least for counties, may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver."); *Swan v. Johnson*, 219 Ga. App. 450, 452, 465 S.E.2d 684, 686 (1995) ("[C]ounties have not waived their sovereign immunity and will retain immunity until it is waived by an act of the General Assembly."). In this case, because there is no statute authorizing a cause of action against Muscogee County, Muscogee County is entitled to summary judgment as to Plaintiff's state law claims.[14]

---

[14]The Court notes that the Georgia Tort Claims Act, O.C.G.A. § 50-21-20 *et eq.*, specifically excludes tort suits against counties. *See Swan*, 219 Ga. App. at 452, 465 S.E.2d at 686.

B.   Defendants in their Official Capacities

In addition, Sheriff Johnson, Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly, in their official capacities, are entitled to summary judgment as to Plaintiff's state law claims because they are entitled to sovereign immunity. A county sheriff may be held liable for a deputy's negligence in performing a ministerial or discretionary function only if the county has waived its sovereign immunity. *Seay v. Cleveland*, 270 Ga. 64, 65, 508 S.E.2d 159, 160 (1998); *Howard v. City of Columbus*, 239 Ga. App. 399, 410, 521 S.E.2d 51, 65 (1999). Thus, because Muscogee County has not waived its sovereign immunity, Sheriff Johnson, Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly, in their official capacities, are entitled to summary judgment as to Plaintiff's state law claims.

C.   Defendants in their Individual Capacities

Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly, in their individual capacities, are entitled to summary judgment as to all of Plaintiff's state law claims because they have official immunity. "[S]tate officers and employees and those of its departments and agencies are subject to suit only when they negligently perform or fail to perform their 'ministerial functions' or when they act with actual malice or intent to cause injury in the performance of their 'official functions.'" *Gilbert v. Richardson*, 264 Ga. 744, 752-53, 452 S.E.2d 476, 483 (1994) (quoting Ga. Const. art. I, § II, ¶ IX(d)).

Therefore, where a task is ministerial, official immunity does not apply.

"Generally, a ministerial act is one that 'is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" *Meagher v. Quick*, 264 Ga. App. 639, 642, 594 S.E.2d 182, 185 (2003) (quoting *Stone v. Taylor*, 233 Ga. App. 886, 888, 506 S.E.2d 161, 163 (1998)). On the other hand, a discretionary task is one which "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Stone*, 233 Ga. App. at 888, 506 S.E.2d at 163 (internal quotation marks omitted). Plaintiff contends that Defendants violated his state law rights when they placed Barnum in his cell. Plaintiff also contends that Defendants violated his state law rights when they allegedly failed to provide him with required emergency medical care. For the following reasons, the Court rejects Plaintiff's arguments.

### 1. Placement of Barnum in Plaintiff's Cell

Plaintiff contends that Trombley and Wimberly, in their individual capacities, violated his state law rights when they allegedly placed Barnum in Plaintiff's cell. Plaintiff claims that the placement of inmates is a ministerial act. However, Georgia law clearly provides that inmate placement in a county jail is a discretionary act, determined based on an officer's "examination of

the facts, [the officer's] experience, and the exercise of [the officer's] best judgment[.]" *Harvey v. Nichols*, 260 Ga. App. 187, 191-92, 581 S.E.2d 272, 276-77 (2003) (holding that the decision to place an inmate in a holding cell rather than the general population was discretionary). The record also supports the contention that inmate placement is a discretionary act. Although "it would [have been] preferred[,]" there was no written policy or guideline that dictated inmate placement at MCJ. (Sheriff Johnson Dep. 23:8-12, May 23, 2006.) In fact, the placement of an inmate at MCJ depended, among other factors, "on what else was going on in the jail." (*Id.* at 23:13-16.) Thus, the evidence in the record also demonstrates that the placement of inmates at MCJ was discretionary. (*See, e.g.*, Trombley Dep. 22:15-21; Ezell Dep. 19:4-20:25, Oct. 5, 2006.)

Because the placement of Barnum in Plaintiff's cell was a discretionary act, and Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to the conclusion that Defendants acted with actual malice, Trombley and Wimberly are entitled to official immunity. Accordingly, Defendants' motion for summary judgment as to Plaintiff's state law breach of duty claim regarding the placement of Barnum in Plaintiff's cell is granted.

2. *Diagnosis and Treatment of Plaintiff's Injury*

Plaintiff also contends that Brooks, Lawrence, Lucas, and Yawn, in their individual capacities, violated his state law rights when

29

they negligently diagnosed and treated his injury by failing to diagnose his injury as an emergency. Although Plaintiff claims that these are ministerial acts, Georgia law clearly provides that the determination of what medical treatment to provide is an act of discretion subject to official immunity. *See Schmidt v. Adams*, 211 Ga. App. 156, 157, 438 S.E.2d 659, 660-61 (1993) (holding that the defendant's negligent diagnosis and treatment of an inmate's medical condition was protected under official immunity because of the defendant's status as an employee of the county jail); *see also Schulze v. DeKalb County*, 230 Ga. App. 305, 308, 496 S.E.2d 273, 276 (1998) (holding that the county paramedic's actions in the treatment and transportation of a pregnant patient were discretionary).

Plaintiff has failed to point the Court to any MCJ guidelines or policies that define what constitutes an emergency. Although there are specific guidelines that dictate what procedures must be followed when an emergency is detected, (*see* Ex. 1 to Pl.'s SOF, Emergency Medical Services Policy), the central question in this case is whether the diagnosis of an inmate's injury as an emergency is itself ministerial. The record clearly indicates that an officer's determination of an inmate's injury as an emergency is discretionary. (*See, e.g.*, Sheriff Johnson Dep. 44:6-25; Morris Dep. 15:13-17, 33:5-34:16, Oct. 3, 2006; Brooks Dep. 21:5-9; Mott Dep. 8:4-13; Lucas Dep. 9:1-10:9, 11:19-12:25, 39:18-22; Ezell Dep. 49:17-19; Mitchell Dep. 8:4-25, Jan. 30, 2007; Yawn Dep. 8:5-14.) Therefore, because

Defendants' diagnosis and treatment of Plaintiff's injury were discretionary acts, and Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to the conclusion that Defendants acted with actual malice, Brooks, Lawrence, Lucas, and Yawn are entitled to official immunity. Accordingly, Defendants' motion for summary judgment as to Plaintiff's state law breach of duty claim regarding Defendants' diagnosis and treatment of Plaintiff's injury is granted.

## CONCLUSION

In summary, the Court grants Defendants' Motion for Partial Summary Judgment (Doc. 44) as to the following claims:

(1)   Plaintiff's § 1983 constitutional claim regarding Barnum's placement in Plaintiff's cell against Sheriff Johnson, Trombley, and Wimberly in their official capacities;

(2)   Plaintiff's § 1983 constitutional claim regarding Barnum's placement in Plaintiff's cell against Muscogee County;

(3)   Plaintiff's § 1983 constitutional claim regarding Barnum's placement in Plaintiff's cell against Trombley and Wimberly in their individual capacities;

(4)   all of Plaintiff's state law claims against Sheriff Johnson, Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly in their official capacities;

(5)   all of Plaintiff's state law claims against Muscogee County; and

(6)   all of Plaintiff's state law claims against Brooks, Lawrence, Lucas, Yawn, Trombley, and Wimberly in their individual capacities.

The Court denies Defendant's motion as to Plaintiff's § 1983 inadequate medical care constitutional claim against Muscogee

31

County.[15]   Therefore, this claim, along with Plaintiff's § 1983 inadequate medical care claim against Defendants Brooks, Lawrence, Lucas, and Yawn, in their individual capacities, remain pending for trial.[16]

IT IS SO ORDERED, this 30th day of October, 2008.

S/Clay D. Land

CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[15]Plaintiff's § 1983 inadequate medical care claim against Sheriff Johnson, Brooks, Lawrence, Lucas, and Yawn, in their official capacities, shall be treated the same as Plaintiff's claim against Muscogee County.

[16]As noted previously, these individual Defendants did not move for summary judgment as to Plaintiff's § 1983 claim.